**AG ORGANIC, INC., Plaintiff,**

v.

**Daniel JOHN, Jr., Defendant.**

**No. 94–CV–0586C.**

United States District Court,
W.D. New York.

July 12, 1995.

Gutman & Gutman, Forest Hills, NY (S. Mac Gutman, of counsel), for plaintiff.

Mark J. O'Connor, Williamsville, NY, for defendant.

## DECISION AND ORDER

CURTIN, District Judge.

This case involves a vitriolic dispute over the right to the possession and use of a parcel of land in the Congressional Village of Carrollton, New York. Currently before the court are (1) plaintiff's motion to compel arbitration, and to permanently stay proceedings in the Seneca Nation of Indians Peacemakers' Court in an action entitled *John v. Mid–America Waste Systems, Inc. and AG Organic, Inc.*, Civil Action No. 414–94 (Item 37; *see also*, Item 36, pp. 21–24, and Items 8 and 39); and (2) defendant's motion to dismiss and for sanctions under Fed.R.Civ.P. 11 (Item 22; *see also*, Item 30, pp. 67 and 70, and Items 21, 23, and 40). Also outstanding is the court's February 2, 1995, order to the plaintiff to file an amended complaint for the purpose of joining the Seneca Nation of Indians as a defendant (Item 23; *see also*, Item 30, pp. 66–67). The plaintiff has submitted papers arguing that the Seneca Nation is not a proper party to this action (Item 39, pp. 7–9). The court will regard the plaintiff's submission as a motion to reconsider that part of the court's February 2, 1995, order that pertains to joinder of the Seneca Nation.

The issue of whether the court should take jurisdiction over the subject matter of this dispute remains in contention. In support of its argument that the court should exercise jurisdiction and intercede in an action currently before the courts of the Seneca Nation, the plaintiff has alleged, *inter alia*, (1) that during the course of the proceedings in *John v. Mid–America Waste Systems, Inc. and AG Organic, Inc.*, Civil Action No. 414–94, and in a December 30, 1994, Memorandum Opinion and Order in that case, the Peacemakers' Court has acted in bad faith and with a desire to harass the plaintiff; (2) that in its December 30, 1994, Opinion and Order, the Peacemakers' Court exceeded the limits of its jurisdiction; and (3) that the plaintiff has been afforded no adequate op- portunity in the tribal courts to challenge the exercise of jurisdiction by the Peacemakers' Court. Because of the nature of these allegations, both the substance of the dispute and the procedural history of the litigation between the parties must be reviewed in some detail.

## BACKGROUND

This dispute centers on the claim by the plaintiff, AG Organic, Inc. ("AG"), that it has a right as a leaseholder to the possession and use, for a municipal sludge processing facility, of a parcel of land in the Congressional Village of Carrollton, New York.

On December 2, 1991, pursuant to the Seneca Nation Settlement Act of 1990, 25 U.S.C. §§ 1774–1774h, the Seneca Nation of Indians and Ann Boser entered into a lease, as lessor and lessee, respectively, covering the parcel of land at issue. Item 8, Ex. A. The lease, designated "Lease No. CA–04040" ("the CA–04040 lease"), was for a term of forty years from February 20, 1992, with an option to renew for a further forty year period (a "40/40 lease"). *Id.* at 3–4. Section 19 of the lease provided that under certain conditions, the lessee had the right to assign the lease or sublet the property. *Id.* at 12–13.

On March 30, 1992, Ann Boser assigned the CA–04040 lease to the defendant in this action, Daniel John, Jr. Item 8, Ex. C. On the same day, Mr. John, who had apparently been engaged as a consultant by the Arrow Corporation ("Arrow"), *id.*, Ex. B, sublet the property to Arrow for a thirty year period commencing April 1, 1992. *Id.*, Ex. D. Under the terms of the sublease ("the Arrow sublease"), Arrow, as lessee, was granted the right to operate a sludge processing or composting facility on the premises. *Id.* at 1. As lessor, Mr. John was to receive payments specified in an agreement between himself and Arrow dated January 23, 1992 (Item 8, Ex. B). *Id.* Section 8 of the sublease provided for immediate termination of the sublease and all obligations thereunder in the event that any law, ordinance, or regulation barred the operation of such a facility. Under such circumstances, however, the lessee,

in its sole discretion, could make reasonable efforts to obtain abatement of the conflicting law, ordinance, or regulation. *Id.* at 2. The lessee was granted the right to assign the sublease, or to sublet further, without the permission of the lessor. *Id.*

AG has placed in the record a copy of a document entitled "Partial Assignment of Lease," dated April 15, 1992, under which Richard E. Wells, d/b/a/ Arrow Compost and Arrow Corporation, agreed to "partially assign Arrow's [sub]lease with Daniel John dated March 30, 1992" to Tully Construction Co., Inc. ("Tully") and AG, "insofar as it covers up to eighty (80) contiguous acres of the land covered by [the Arrow sublease] ..." Item 8, Ex. E. Tully and AG agreed to "assume all duties, liabilities, and obligations of Arrow with respect to [the Arrow sublease]." *Id.* By its own terms, the partial assignment was made pursuant to an agreement between Tully, AG, and Arrow, dated March 24, 1992 ("the Tully/AG–Arrow agreement"). *Id.*

A copy of the Tully/AG–Arrow agreement is attached to Item 18, Declaration of S. Mac Gutman, as Ex. H. AG maintains, and the agreement appears to confirm, that AG and Tully contracted with Arrow to finance Mr. John's acquisition of the CA–04040 lease. *Id.; see also,* Item 13, ¶¶ 4–7. According to Dana Taylor, the President of AG, an essential condition of AG's investment was Mr. John's representation that the Seneca Nation approved of the facility and would require no permits. Item 13, ¶ 8. AG has placed in the record a copy of a letter dated April 15, 1992, from Stephen A. Gordon, a Councillor of the Seneca Nation, to Tully, indicating that Mr. Gordon believed that the facility would be acceptable to the Nation, if run in accordance with New York State Department of Environmental Conservation and Federal Environmental Protection Agency guidelines. *Id.* at ¶ 9 and Ex. B.

According to AG, it entered the property in April 1992, improved the land with a road and drainage, constructed a waste processing facility, including a 30,000 square foot concrete pad, and installed sludge processing equipment. Construction was completed in May 1992, at a cost of $500,000. Item 13,

¶¶ 10–11. On June 25, 1992, however, the Council of the Seneca Nation determined that the facility was operating without Nation consent, in direct violation of the Nation's Waste Disposal Ordinance. Item 18, Gutman Declaration, Ex. M. The Council resolved to cancel the CA–04040 lease, for breach by Mr. John, and to authorize the Nation's President to take such actions as might be necessary to close the facility. *Id.*

AG maintains that Tully/AG subsequently spent $100,000 in engineering fees to satisfy the Nation that the facility and its product were safe. Item 13, ¶ 13; *see also,* Item 18, Gutman Declaration, ¶ 24(k). On June 23, 1993, the Seneca Nation Council rescinded its June 25, 1992, resolution and authorized the operation of the facility "located on lands owned by or leased by Daniel John, Jr.," provided that the facility underwent "regular environmental audits to ensure compliance with Seneca Nation laws, applicable federal laws and regulations." Item 18, Gutman Declaration, Ex. L.

AG claims that soon after issuance of the Seneca Nation Council's June 23, 1993, resolution, Mr. John opened negotiations with AG's competitor, Wheelabrator Waste Systems, to take over and operate AG's facility. Item 13, ¶ 15. According to AG, Mr. John took the position that the June 1992 resolution of the Seneca Nation Council had terminated the Tully/AG tenancy on the property at issue, and that he had become the owner of AG's equipment. *Id.,* ¶ 16.

On or about April 27, 1994, Mr. John filed a complaint in the Seneca Nation Peacemakers' Court, against AG and Mid–American Waste Systems, Inc. ("Mid–American"). Item 8, Ex. F. The complaint alleged that AG and Mid–American had failed to make payments due to Mr. John under a verbal agreement made on April 3, 1993, pursuant to which Mr. John had allowed the two companies to use his property as a sludge processing facility, and had performed various services for the companies. The relief requested included $90,000 for rental of Mr. John's property, and $180,000 for services rendered. *Id.*

On or about May 25, 1994, AG filed its answer, asserting various affirmative defenses, including (1) that the Peacemakers' Court lacked both subject matter jurisdiction and personal jurisdiction over AG; and (2) that the March 24, 1992, agreement between Arrow, "acting as agent for Daniel John, Jr.," and AG and Tully was "the only valid agreement between Daniel John, Jr. and the defendant AG Organic," precluding Mr. John from claiming that AG had any other obligation toward him. Item 8, Ex. G, ¶¶ 10–27.[1] As a counterclaim, AG alleged that Mr. John had conspired with others to breach the Tully/AG–Arrow agreement, to divest AG of its rights under the Arrow Lease, and to convert to his own use the sludge processing facility constructed by AG. *Id.* at ¶¶ 29–32. The company sought money damages of $500,000. *Id.* at 7.

On June 6, 1994, Mr. John served a response to AG's answer, in which he asserted various affirmative defenses to AG's counterclaims. Item 8, Ex. H. These affirmative defenses included allegations that AG and Mid–American had engaged in a course of tortious conduct, as a result of which Mr. John had been damaged in the amount of some $12,000,000. Mr. John requested relief in the form of a money judgment of more than $12,000,000 in compensatory damages, plus tenfold punitive damages. *Id.* at 8. AG subsequently filed an answer to the counterclaims contained in Mr. John's June 6, 1994, submission, essentially re-pleading its original answer. Item 8, Ex. I.

On June 10, 1994, counsel for the parties appeared at a status conference before the Peacemakers' Court, at which counsel for AG and Mid–American informed the court that they intended to move to dismiss on grounds of lack of jurisdiction. Item 4, ¶ 15. According to AG, the court summarily determined, by oral decision, that it had both personal jurisdiction over the defendants and subject matter jurisdiction, without the benefit of affidavits or memoranda of law addressing the jurisdictional issues, and without an evidentiary hearing or oral argument. *Id.* at

¶¶ 16–17. On June 23, 1994, the court issued a written Order of Jurisdiction, finding that the Seneca Nation had personal, territorial, and subject matter jurisdiction in the action. It provided a detailed legal analysis of its reasons for doing so. *Id.* at ¶ 19 and Ex. G.

The June 23, 1994, Order of Jurisdiction expressly stated that the defendants had the right to appeal the decision within thirty days of receipt of the order. Accordingly, on July 8, 1994, AG and Mid–American filed a joint appeal with Seneca Nation Court of Appeals. Item 4, ¶¶ 19–20 and Ex. H. By letter dated July 14, 1994, however, the Peacemakers' Court informed AG that the language in the June 23, 1994, order concerning the defendants' right of appeal had been inserted in error. The order was intended to be an interlocutory decision and was not appealable at that time. A hearing on the merits of the action would proceed on July 20, 1994, as scheduled. *Id.* at ¶ 22 and Ex. I.

On July 15, 1994, AG and Mid–American filed a motion in the Seneca Nation Court of Appeals, for an order confirming that proceedings in the Peacemakers' Court should be stayed pending the Court of Appeals' ruling on the appeal of the June 23, 1994, Order of Jurisdiction. Item 4, ¶ 23 and Ex. J. Five days later, the Peacemakers' Court issued a revised Order of Jurisdiction in which the language referring to the defendants' right of immediate appeal was deleted, and an order rescheduling the hearing on the merits from July 20, 1994, to August 18, 1994. *Id.*, ¶ 24 and Exs. K and L.

On July 29, 1994, the Seneca Nation Court of Appeals issued an order dismissing the AG/Mid–American appeal of the Order of Jurisdiction as premature, since the order was an intermediate one and no final judgment on the merits of the case had been rendered by the Peacemakers' Court. Item 4, ¶ 25 and Ex. M.

On August 16, 1994, AG filed its initial complaint in this case. Item 1. The complaint stated three causes of action, (1) for a declaratory judgment that the courts of the Seneca Nation lacked jurisdiction over the

---

**1.** The agreement was identified in the Answer as having been made on March 30, 1992. Item 8, Ex. G, ¶ 15. It is apparent from AG's submissions to this court, however, that the agreement referred to was the Tully/AG–Arrow agreement dated March 24, 1994, cited above.

subject matter of the dispute between AG and Mr. John, and for preliminary and permanent injunctive relief restraining Mr. John from pursuing his claim against AG in the Peacemakers' Court; (2) for breach by Mr. John of the Tully/AG–Arrow agreement; and (3) for conversion by Mr. John of the sludge processing facility and equipment allegedly owned by AG. The complaint alleged further that this court had jurisdiction both under 28 U.S.C. § 1332, on the basis of diversity of citizenship, and under 28 U.S.C. § 1331, on the grounds that the action arose under federal law, specifically the Act of February 19, 1875, ch. 90, 18 Stat. 330 ("the 1875 Act").

AG's complaint was accompanied by a motion for a temporary restraining order ("TRO") and a preliminary injunction enjoining Mr. John from proceeding with his action in the Peacemakers' Court. Items 3 and 4. AG argued that on its face, the complaint filed by Mr. John in the Peacemakers' Court action was governed by the 1875 Act, which, according to AG, "expressly provides that exclusive jurisdiction of actions for rent such as that brought by Mr. John is vested in the courts of the State of New York and the federal district courts." Item 3, pp. 5–6. The proceedings in the Peacemakers' Court were therefore improper. AG acknowledged that the general rule is that a tribal court whose jurisdiction is being challenged is, in the first instance, entitled to determine the extent of its own jurisdiction, and that under most circumstances federal courts should not intervene until the party challenging the tribal court's jurisdiction has exhausted its tribal remedies through appellate review. *Id.* at 11–12 (citing *National Farmers Union Insurance Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), and *Iowa Mutual Insurance Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987)). It maintained, however, that Mr. John's action in the Peacemakers' Court was "patently violative of express jurisdictional prohibitions," and therefore fit one of three exceptions to the exhaustion rule recognized by the Supreme Court in *National Farmers Union,* 471 U.S. at 856, n. 21, 105 S.Ct. at 2454 n. 21. *Id.* at 12–13. It also argued that by attempting to have the Sene-

ca Nation Court of Appeals hear an interlocutory appeal of the Peacemakers' ruling on jurisdiction, it had exhausted its tribal remedies to the extent required by applicable case law. *Id.* at 13.

The day before AG filed its complaint here, its co-defendant in Mr. John's Peacemakers' Court action, Mid–American, filed a separate lawsuit in this district, entitled *Mid–American Waste Systems, Inc. v. Daniel John, Jr.,* Civil Action No. 94–CV–581. On August 16, 1994, Mid–American moved for a TRO and preliminary injunction, making precisely the same arguments as AG. On August 17, 1994, following oral argument, Judge Arcara denied Mid–American's motion from the bench. He found that Mid–American had failed to demonstrate that it would suffer irreparable harm if a TRO or a preliminary injunction was not granted, and that it had failed to exhaust its tribal remedies. He could not, at that time, agree with Mid–American's argument that the 1875 Act expressly prohibited the Peacemakers' Court from exercising jurisdiction in actions such as the one brought by Mr. John. Thus, based upon the record then before him, and viewed in the limited context of the application for a TRO, he could not agree that the action in the Peacemakers' Court was encompassed by the "patently violative of express jurisdictional prohibitions" exception to the exhaustion rule. *See* Item 7, Ex. B, transcript, pp. 27–33.

On August 19, 1994, this court issued an order denying AG's motion for a TRO and preliminary injunction, for the reasons stated by Judge Arcara in his ruling from the bench in the Mid–American case. Item 5.

Mr. John's action in the Peacemakers' Court proceeded to trial in September 1994. On September 27, 1994, AG's counsel, Mac Gutman, reviewed the CA–04040 lease for the first time, in preparation for cross-examination of Mr. John. He found that Article 16 of the lease contained certain arbitration provisions. Item 37, Gutman Declaration, ¶ 7. Shortly thereafter, on October 3, 1994, AG filed a Complaint in Arbitration with the Seneca Nation Clerk, seeking a determination that AG had a right to possession and use of the subject property and the sludge

processing facility as assignee of the CA–04040 lease. Item 8, p. 10 and Ex. J.

On October 5, 1994, AG filed a motion in this court to stay all further proceedings in the Peacemakers' Court, and to compel the parties to submit their dispute to binding arbitration under the provisions of Article 16 of the CA–04040 lease. Items 8 and 37. On the same day, Robert B. Porter, the Seneca Nation's Attorney General, wrote to Mr. Gutman explaining that the Article 16 arbitration provisions in 40/40 leases such as the CA–04040 lease apply only to disputes arising between the Seneca Nation and lessees, and only with respect to a party's compliance with or obligations under the terms of the lease. Item 12, Ex. A, p. 2. AG's dispute with Mr. John was a private one, appearing to arise from agreements made between AG and Mr. John, and not arising under any of the provisions of the 40/40 lease. *Id.* The Seneca Nation was not a party. Accordingly, the proper forum for resolution of the dispute was the tribal courts. *Id.*

Oral argument on AG's motion to compel arbitration and for a stay of the Peacemakers' Court action was held on October 12, 1994. Item 36. At that time, this court denied AG's application for an immediate stay of proceedings in the Peacemakers' Court, but deferred ruling on its motion to compel arbitration and for a permanent stay. *Id.* at 21–24; Item 11. No further decision was made on the question of whether AG was required to exhaust, or had in fact exhausted, its tribal remedies on the issue of tribal court jurisdiction. Item 36, pp. 24–25.

On the same day as oral argument was held on AG's motion to compel arbitration, AG filed a new action against Mr. John in this court. *AG Organic, Inc. v. Daniel John, Jr.,* Civil Action No. 94–CV–728. In its complaint, AG claimed that as Arrow's assignee, it was entitled to the exclusive occupancy and use of the property leased to Arrow by Mr. John. 94–CV–728, Item 1. It alleged further that on or before September 20, 1994, Mr. John had entered the land and forcibly ejected AG from the land, by barring AG's equipment vendors from retrieving equipment, by effectuating the arrest for trespass of AG's agent and attorney, Adele Fine, and by other unspecified acts and declarations. Mr. John remained in possession of the premises, it claimed, "by menace and threats of violence." *Id.* at ¶ 13. Again, AG asserted that this court had both federal question jurisdiction, on the basis of the applicability of the 1875 Act, and diversity jurisdiction. *Id.* at ¶¶ 3–5. The company sought relief by way of a judgment affirming its right to exclusive possession, occupancy, and use of the premises. *Id.* At 4. Subsequently, it filed an amended complaint adding claims for damages for conversion of AG's personal property, deprivation of the value of improvements made to the property, and loss of business and anticipated profits. Civil Action No. 94–CV–728, Item 2.

On December 30, 1994, the Peacemakers' Court issued its decision on the merits of Mr. John's action against AG and Mid–American, finding in favor of Mr. John and granting him, *inter alia,* compensatory damages of $135,000 and punitive damages of $3,000,000 against AG. Item 18, Gutman Declaration, ¶¶ 2–3 and Ex. A. The court's order directed AG to remove all sludge, and the sludge processing facility, from the site within thirty days. *Id.,* ¶ 4 and Ex. A. On or about January 17, 1995, AG filed a Notice of Appeal in the Seneca Nation Court of Appeals. *Id.,* ¶ 11 and Ex. B.

On January 29, 1995, AG filed a motion in this court (1) for an order consolidating Civil Action No. 94–CV–728 with its original action, Civil Action No. 94–CV–586; (2) for a preliminary injunction enjoining enforcement of the Peacemakers' December 30, 1994, order; (3) for a preliminary injunction restraining Mr. John from interfering with AG's use and occupancy of the property at issue; and (4) pending a hearing on its motion for injunctive relief, for a TRO restraining Mr. John from preventing AG from gaining access to, occupying, and using the property. Item 18.

In its motion papers, AG argued that under *National Farmers Union,* 471 U.S. at 856, n. 21, 105 S.Ct. at 2454, n. 21, immediate federal court intervention was warranted, and no exhaustion of tribal remedies was required, because the Peacemakers' Court had "exceeded its jurisdiction, and was moti-

vated by bad faith against, and a desire to harass, AG ORGANIC." Item 18, Gutman Declaration, ¶ 13.[2] The Peacemakers' December 30, 1994, order, AG claimed, was "based upon a legislative and political determination," *id.* at ¶ 25, that AG's facility violated the June 25, 1992, resolution of the Seneca Nation Council which cancelled the CA–04040 lease and prohibited sludge processing at the site. The Peacemakers, AG argued, omitted from their decision any reference to the June 23, 1993, Council resolution that rescinded the June 25, 1992, resolution. *Id.* at ¶¶ 25–26. In so doing they acted legislatively, abrogating the Tribal Council's June 23, 1993, resolution, and it was upon this legislative act that the court's award to Mr. John of compensatory and punitive damages and other relief was based. *Id.* at ¶ 27. *See also,* Item 19, pp. 8–14. Further, the award of $3,000,000 in punitive damages violated the Indian Civil Rights Act, 25 U.S.C. § 1302, which places limits on the authority of Indian tribes to impose fines and other penalties. Item 19, p. 8. And since Mr. John had sued to recover rent and other money damages, rather than possession of the leasehold, the court "patently lacked jurisdiction to decree, beyond the scope of the pleadings and the issues joined at trial, that AG ORGANIC must quit its leasehold and remove the sludge processing facility." *Id.* at 13–14.

The Peacemakers' Court's decision, AG maintained, "betray[ed] blatantly political motivations." Item 18, Gutman Declaration, ¶ 28. The three member of the court, Carol Moses, Grace John and Calvin Lay, were all, according to AG, "members of a political faction, aligned with Mr. DANIEL JOHN, which in December 1994, turned out the Tribal councilors who approved AG ORGANIC's operation." *Id.* at ¶ 29. Prior to the December 30, 1994, decision, these Peacemakers had "met *sub rosa* and privately" with Mr. John and his attorney, Mark O'Connor, "to discuss the merits of a case pending before the Peacemakers' Court in which ac-

tions by the newly elected President of the Nation were being challenged." *Id.* at ¶ 30. In that case, AG asserted, "Mr. O'Connor was representing Dennis J. Bowen, a political ally of Mr. JOHN, who was recently elected president of the Seneca Nation." Item 19, pp. 6–7. The New York State Supreme Court in Cattaraugus County had taken jurisdiction of an action brought by Nation members questioning the authority of Mr. Bowen. Item 18, Gutman Declaration, ¶ 31. It was "not mere coincidence" that the Peacemakers' decision in Mr. John's case against AG and Mid–American "was rushed to publication at midnight on December 30, 1994, on the eve of the hearings before Justice Doyle in State Supreme Court: the decision in this case is nothing less than a exclamation [sic] of political power, by a new tribal regime." *Id.* at ¶ 32.[3] At the least, the Peacemakers' meeting with Mr. O'Connor and Mr. John raised questions as to the Peacemakers' impartiality. Item 19, pp. 6–7; Item 24. *See also,* Civil Action No. 94–CV–728, Item 6, Gutman Declaration, ¶¶ 2–7.

In response to AG's motion, Mr. John cross-moved to dismiss and for sanctions under Fed.R.Civ.P. 11. Items 21 and 22. He argued, *inter alia,* (1) that this court lacked jurisdiction over the subject matter of the dispute (Item 21, pp. 8–9, 17–18, 20–22); (2) that the court should not exercise jurisdiction because AG had still failed to exhaust its tribal remedies (Item 21, pp. 9–11, 22–24; Item 22, ¶¶ 5–7); (3) that AG's claim that the December 30, 1994, decision of the Peacemakers' Court was motivated by bad faith and a desire to harass AG was baseless and defamatory, warranting the imposition of sanctions on AG's counsel, Mr. Gutman (Item 21, pp. 18–20, 23; Item 22, ¶¶ 42–56); and (4) that Fed.R.Civ.P. 19 required dismissal of the action for failure to join the Seneca Nation as an indispensable party (Item 21, pp. 12–17).

Oral argument on the various motions was held on January 30, 1995. Item 30. On

---

**2.** In its accompanying memorandum of law, AG suggested for the first time that this court had subject matter jurisdiction pursuant to 25 U.S.C. § 233, as well as under the 1875 Act. Item 19, pp. 4, 5.

**3.** For a description of the political and legal context of these allegations, *see Bowen v. Doyle,* 880 F.Supp. 99, 106–110 (W.D.N.Y.1995).

February 2, 1995, the court issued an order (1) granting AG's motion to consolidate Civil Action No. 94–CV–728 with Civil Action No. 94–CV–586; (2) denying AG's motion for injunctive relief, on the grounds that the company had failed to show that, absent an injunction, it would suffer irreparable harm; and (3) finding it premature to rule on Mr. John's motions to dismiss and for sanctions. Item 23. In addition, the court concluded that the Seneca Nation of Indians qualified under Fed.R.Civ.P. 19(a) as an indispensable party to the resolution of at least some of the claims asserted by AG. *Id.* The court recognized that the Nation might take the position that sovereign immunity precluded joinder; nevertheless, AG was directed to file an amended complaint for the purpose of joining the Nation as a defendant. *Id.* No decision was made at that time on the issue of subject matter jurisdiction.

The court has subsequently received a number of letters and affidavits from the parties, which do little to assist the court in reaching a decision on the outstanding motions, but serve to underscore the contentious nature of the dispute. Items 25–29, 31, 33, 39–40, 42–43, 45.

### *DISCUSSION*

#### *1. Jurisdiction*

 In *National Farmers Union,* the Supreme Court made it clear that a federal district court may determine under 28 U.S.C. § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction. *National Farmers Union Insurance Cos. v. Crow Tribe of Indians,* 471 U.S. at 853, 105 S.Ct. at 2452. At the same time, the Court held that the tribal court whose civil jurisdiction is being challenged must be given "the first opportunity to evaluate the factual and legal bases for the challenge." *Id.* at 856, 105 S.Ct. at 2454. The party contesting the tribal court's jurisdiction must exhaust the remedies available to it in the tribal court system, and until it has done so, it is premature for a federal court to consider granting any relief. *Id.* at 857, 105 S.Ct. at 2454. This means that tribal court appellate review of the issue of tribal court jurisdiction must be complete before the federal court may intervene.

*Iowa Mutual Insurance Co. v. LaPlante,* 480 U.S. at 17, 107 S.Ct. at 977. The exhaustion rule applies equally in cases where federal jurisdiction is premised on diversity of citizenship, under 28 U.S.C. § 1332, rather than on the existence of a federal question. *Id.* at 16, 107 S.Ct. at 976–77. The rule does not deprive the federal courts of subject matter jurisdiction; rather, district courts must "determine whether the federal action should be dismissed or stayed pending exhaustion of the remedies available in the tribal court system." *Id. See also, Bowen v. Doyle,* 880 F.Supp. 99, 123–24 (W.D.N.Y.1995).

In *National Farmers Union,* the Supreme Court indicated that exhaustion need not be required

> where an assertion of tribal jurisdiction "is motivated by a desire to harass or is conducted in bad faith," *cf. Juidice v. Vail,* 430 U.S. 327, 338 [97 S.Ct. 1211, 1218, 51 L.Ed.2d 376] (1977), or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

*National Farmers Union Insurance Cos. v. Crow Tribe of Indians,* 471 U.S. at 856, n. 21, 105 S.Ct. at 2454 n. 21. AG relies on this language in contending that exhaustion should not be required in the present case.

#### a. *The Exercise of Jurisdiction by the Peacemakers' Court is Not Patently Violative of § 7 of the 1875 Act*

 AG's first argument, which it has made both here and before the Peacemakers' Court, is that since its dispute with Mr. John centers on the issue of the rights of the two parties to the possession, occupancy, and use of real property within the Congressional Village of Carrollton, subject matter jurisdiction is governed by § 7 of the 1875 Act. Section 7 provides that:

> the courts of the State of New York within and for the county of Cattaraugus, having jurisdiction in real actions, and the circuit and district courts of the United States in and for the northern [now western] district of said State, shall have jurisdiction of all

actions for the recovery of rents and for the recovery of possession of any real property within the limits of [the Congressional Villages], whether actions of debt, ejectment, or other forms of action, according to the practice in said courts.

18 Stat. 330, § 7. This provision, AG maintains, gives this court subject matter jurisdiction in this case, and proscribes the exercise of jurisdiction by the Peacemakers' Court. Thus, according to AG, Mr. John's action in the Peacemakers' Court is "patently violative of [an] express jurisdictional prohibition[ ]," and exhaustion is not required under *National Farmers Union,* 471 U.S. at 856, n. 21, 105 S.Ct. at 2454, n. 21.

Even assuming, *arguendo,* that § 7 of the 1875 Act is the governing jurisdictional provision in this case, AG's argument must fail.[4] As Judge Arcara noted in his August 17, 1994, ruling in *Mid–American Waste Systems, Inc. v. Daniel John, Jr.,* Civil Action No. 94–CV–581, "[t]he Supreme Court has made clear that any limitation on the jurisdiction of tribal courts must be clear, express, and affirmative in order to be effective." Item 7, Ex. B, transcript, p. 31.

Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty. Civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute. "Because the Tribe retains all inherent attributes of sovereignty that have not been divested by the Federal Government, the proper inference from silence ... is that the sovereign power ... remains intact." *Merrion v. Jicarilla Apache Tribe,* 455 U.S. [130,] 149, n. 14 [102 S.Ct. 894, 907 n. 14, 71 L.Ed.2d 21] [ (1982) ].

*Iowa Mutual Insurance Co. v. LaPlante,* 480 U.S. at 18, 107 S.Ct. at 977 (internal citations omitted). The language of § 7 of the 1875 Act does not expressly prohibit the tribal courts from exercising jurisdiction in actions involving disputes over real property in the Congressional Villages. In the absence of such an express prohibition, this court must presume that tribal sovereign power remains

intact, and that § 7 merely endows the state and federal courts with jurisdiction concurrent with that of the tribal courts. Accordingly, the "patently violative of express jurisdictional prohibitions" exception to the exhaustion rule of *National Farmers Union,* 471 U.S. at 856, n. 21, 105 S.Ct. at 2454 n. 21, does not apply.

**b.** ***AG's Allegation that the Peacemakers' Court's December 30, 1994, Order Constitutes the Improper Exercise of Legislative Authority Does Not Support the Assumption of Jurisdiction by This Court***

In moving for a preliminary injunction enjoining the enforcement of the December 30, 1994, order of the Peacemakers' Court, AG argued that under *National Farmers Union,* 471 U.S. at 856, n. 21, 105 S.Ct. at 2454, n. 21, no exhaustion of tribal remedies was required because "[t]he Peacemakers' Order, ejecting AG ORGANIC from its leasehold, constitutes the exercise of legislative authority in contravention of the separation of powers explicitly delineated in the Constitution of the Seneca Nation, Section I, and contravenes accepted understanding of the limits upon judicial authority." Item 19, p. 8. More specifically, AG claimed that the Peacemakers' order improperly relied on the Seneca Nation Council's June 25, 1992, resolution cancelling the CA–04040 lease and prohibiting sludge processing at the property. That order, AG argued, was rescinded by the June 23, 1993, Council resolution, and the Peacemakers' failure to refer to, or to take into account, the latter resolution "legislates the abrogation of the [June 23, 1993, resolution], and is therefore a patent violation of the express jurisdictional prohibition implicit in the Seneca Nation's Constitution, Section I, which grants exclusive legislative power to the Tribal Council." *Id.* at 12.

There is no merit to AG's argument. The question of whether, and if so how, the June 23, 1993, Council resolution might pertain to the dispute between AG and Mr. John involves issues of both fact and law that AG may raise on appeal within the tribal court

---

4. The court offers no opinion on the question of whether or not § 7 is, in fact, applicable.

system.[5] AG's allegation that the Peacemakers' Court exercised legislative authority in violation of the Seneca Nation Constitution is clearly a matter for the tribal appellate courts; it provides no grounds for intervention by this court.[6]

### c. AG's Allegations of Bad Faith On the Part of the Peacemakers Do Not Support the Exercise of Jurisdiction by This Court

■ AG's third argument under footnote 21 of *National Farmers Union* is that during the course of the proceedings before them, and in their December 30, 1994, order, the Peacemakers were motivated by bad faith and a desire to harass AG. Again AG's allegations do not support intervention by this court.

AG makes a variety of assertions in support of its "bad faith" argument. First, it claims that the Peacemakers' bad faith is "patently evident from their conduct during the trial," Item 19, p. 6.[7] Second, it maintains that while the case was *sub judice*, the Peacemakers met secretly with Mr. John and his attorney, Mark O'Connor, under circumstances "demonstrat[ing] a relationship [of a political nature between the Peacemakers and Mr. John] that clearly taints these proceedings." *Id.* at 7; Item 18, Gutman Declaration, ¶¶ 28–30; Item 24. Third, it contends that the December 30, 1994, order, "and particularly the assessment of Three Million Dollars in punitive damages," demonstrated bad faith, since "[t]here was not a scintilla of evidence that justified punishing AG OR-GANIC for its dealings with Mr. JOHN," and "the Peacemakers were without authority to find that AG ORGANIC violated Seneca Nation laws." Item 19, p. 7. And finally, it maintains that the timing of the December 30, 1994, order betrayed political motivations. Item 18, Gutman Declaration, ¶¶ 31–32.

AG's allegations are made in the context of the political and legal dispute between the recently elected President of the Seneca Nation, Dennis J. Bowen, and his political rivals. *See Bowen v. Doyle,* 880 F.Supp. at 106–110. AG's theory appears to be that Mr. John and the members of the Peacemakers' Court are all political allies of Mr. Bowen. According to AG, the Peacemakers' handling of the proceedings in the action between Mr. John and AG and Mid–American, and their December 30, 1994, decision in that case, reflected their political alignment with Mr. Bowen and Mr. John.

This is not the first time that it has been alleged in this district that the Peacemakers have been aligned with or biased in favor of Mr. Bowen or one of his supporters. In *Bowen v. Doyle,* 880 F.Supp. 99, the defendants-intervenors, political rivals of Mr. Bowen, argued that the tribal court exhaustion requirement should not apply because the Peacemakers' Court had been corrupted by

---

**5.** The question of whether the June 23, 1993, resolution is at all relevant to determination of the dispute between AG and Mr. John would appear to depend on, at a minimum, (1) whether the series of transactions that took place in March and April 1992 between Ms. Boser, Mr. John, Arrow, Tully, and AG gave AG a valid leasehold interest (sublease) in the property at issue; (2) whether the sublease, if valid, could have survived the June 25, 1992, resolution which, by its own terms, cancelled Mr. John's lease (the CA–04040 lease); (3) whether the sublease, if it did survive the June 25, 1992, resolution, was terminated pursuant to its own § 8 following passage of that resolution; and (4) whether the June 23, 1993, resolution that rescinded the June 25, 1992, resolution and reinstated the CA–04040 lease (and so Mr. John's interest in the property), could also have had the effect of reinstating any sublease that AG may have held.

**6.** AG also argued, *inter alia,* that the Peacemakers' Court exceeded its jurisdiction (1) by awarding punitive damages beyond the limits of its authority under the Indian Civil Rights Act, 25 U.S.C. § 1302 (Item 19, p. 8), and (2) in decreeing "beyond the scope of the pleadings and the issues joined at trial, that AG ORGANIC must quit its leasehold and remove the sludge processing facility." *Id.* at 13–14. Again, these are matters that AG may properly raise on appeal in the tribal appellate courts.

**7.** In particular, AG claims that "[d]uring the trial, AG ORGANIC's President, Dana Taylor was barred from attending the hearing while DANIEL JOHN was being cross-examined, but DANIEL JOHN was permitted in the room during Mr. Taylor's entire testimony. AG ORGANIC was denied subpoena power and the right to compel testimony of tribal officials. AG ORGANIC's lawyer, Adele Fine, was arrested while attempting to inspect AG ORGANIC's equipment at the leasehold." Item 19, p. 6.

Mr. Bowen, and was biased against them. *Id.* at 126. Judge Arcara rejected their argument, noting that the federal courts had consistently required that allegations of tribal court bias or incompetence be addressed, in the first instance, in the tribal court itself. *Id.* at 126–27.

> Allegations of corruption, bias or error by the Peacemakers Court must be presented first to the Peacemakers Court for resolution. Any alleged error in the Peacemakers Court decision can and should be reviewed in the Nation's Court of Appeals. A litigant cannot avoid the tribal court exhaustion requirement by declining to pursue appellate remedies that are available in the tribal court system.

*Id.* at 127.

As the Supreme Court indicated in *National Farmers Union*, there may be cases in which exhaustion should be excused on the grounds of bad-faith assertion of jurisdiction by a tribal court. This, however, is not one of them. The mainstay of AG's claim of bad faith is its contention that in its December 30, 1994, order, the Peacemakers' Court reached a decision that was not supported by the facts presented at trial and by the pertinent law, and which exceeded the scope of the court's jurisdiction. As discussed above, such claims should be presented to the Seneca Nation Court of Appeals, and not, at least in the first instance, to this court.

■ AG's allegations of improper handling of the trial proceedings by the Peacemakers, and of political bias, are also most appropriately considered on appellate review within the tribal court system. Such claims are extremely sensitive in nature, but unfortunately, " 'arguments questioning the competency and neutrality of tribal courts have long been a mainstay in attacks on tribal jurisdiction by non-Indians.' " *Bowen v. Doyle,* 880 F.Supp. at 127 (quoting *Middlemist v. Secretary of the United States Department of Interior,* 824 F.Supp. 940, 946 (D.Mont.1993)). The policy interests underlying the exhaustion doctrine—in particular, the protection of tribal sovereignty, including the preservation of the independence and authority of the tribal courts—dictate that, except in the most unusual circumstances,

claims of bias or incompetence be raised first and fully litigated in the tribal court system. This court finds no compelling reason to excuse exhaustion on the basis of the "bad faith" exception in the present case.

### d. *AG has Not Been Denied an Adequate Opportunity to Challenge Tribal Court Jurisdiction*

■ AG's final argument under footnote 21 of *National Farmers Union* is that its appeal to the Seneca Nation Court of Appeals does not provide an adequate opportunity to challenge tribal court jurisdiction, (1) because in the time taken to pursue that appeal, AG will suffer irreparable harm, and (2) because "there can be no reasonable doubt that the Peacemakers' decision and order exceeded their jurisdiction ·and ... [was] lawless and without foundation. It would, [sic] clearly be futile to require AG ORGANIC to waste the time necessary to complete tribal appellate review." Item 19, pp. 14–15.

AG's argument is without merit. This court has already found that the company has failed to demonstrate that it would suffer irreparable harm in the absence of an injunction either prohibiting Mr. John from proceeding with his lawsuit in the Peacemakers' Court, Item 5, or enjoining the enforcement of the Peacemakers' December 30, 1994, order. Item 23. And even if it were established that AG *would* suffer some irreparable harm while pursuing its appeal in the Nation's courts, it is not at all clear that the mere existence of such harm would be a sufficient basis for this court to find that the company had been denied an adequate opportunity to challenge the tribal court's jurisdiction within the meaning of footnote 21 of *National Farmers Union.*

AG's contention that it would be futile to require the completion of tribal appellate review because "there can be no reasonable doubt" that the Peacemakers acted beyond the limits of their jurisdiction merely restates, in a slightly different form, the company's "improper exercise of legislative authority" and "bad faith" arguments, which

have already been considered and rejected, *supra.*

### 2. The Parties' Outstanding Motions

■ Since AG has not yet exhausted its available tribal remedies, it is premature for this court to consider granting AG any relief. *National Farmers Union Insurance Cos. v. Crow Tribe of Indians,* 471 U.S. at 857, 105 S.Ct. at 2454. The court must, at a minimum, withhold ruling on that part of the company's outstanding motion, Item 37, that seeks relief in the form of an order to compel arbitration. To the extent that the motion seeks an order permanently staying proceedings in the courts of the Seneca Nation, it must be denied.

■ The court must decide further whether this case "should be dismissed, or merely held in abeyance pending the development of further Tribal Court proceedings." *National Farmers Union Insurance Cos. v. Crow Tribe of Indians,* 471 U.S. at 857, 105 S.Ct. at 2454. The latter course appears to be the appropriate one here. If the Peacemakers' Court's exercise of jurisdiction is upheld on appeal within the tribal court system, AG may challenge that ruling here. *Iowa Mutual Insurance Co. v. LaPlante,* 480 U.S. at 19, 107 S.Ct. at 978 (citing *National Farmers Union,* 471 U.S. at 853, 105 S.Ct. at 2452). Under the particular circumstances of this case, it makes most sense for this court to retain jurisdiction, but to hold further proceedings in abeyance, rather than to dismiss. Accordingly, the court will withhold ruling on Mr. John's motion to dismiss and for Rule 11 sanctions, Item 22.

The court's order directing AG to file an amended complaint for the purpose of joining the Seneca Nation of Indians as a defendant, Item 23, is stayed. The question of joinder will be reconsidered if AG decides to proceed with this action after the question of tribal jurisdiction has been fully exhausted in the courts of the Seneca Nation.

### CONCLUSION

For the reasons stated above, AG's motion, Item 37, is denied to the extent that it seeks a permanent stay of proceedings in the courts of the Seneca Nation in *John v. Mid–America Waste Systems, Inc. and AG Organic, Inc.,* Civil Action No. 414–94. The court will retain jurisdiction over this action, but will withhold ruling at this time on that part of AG's motion that seeks to compel arbitration, Item 37, and on Mr. John's motion to dismiss and for sanctions, Item 22. The court's order directing AG to file an amended complaint for the purpose of joining the Seneca Nation of Indians as a defendant, Item 23, is stayed.

So ordered.